<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| JUDITH FORDHAM, DANI GANNON, and WILLIAM GANNON, *on behalf of themselves and others similarly situated,* | : : : : : : : | |
| Plaintiffs, | : : | Case No. 3:18-cv-13808-BRM-LHG |
| v. | : : | |
| SETERUS, INC., *et al.,* | : : | **OPINION** |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Seterus, Inc. ("Seterus") and Nationstar Mortgage, LLC's ("Nationstar") (collectively, "Defendants") Motion to Dismiss Plaintiffs Judith Fordham ("Fordham"), Dani Gannon and William Gannon's (the "Gannons") (together with Fordham, "Plaintiffs") Second Amended Complaint for being time-barred pursuant to Federal Rule of Civil Procedure 12(b)(1) and for the failure to state a claim for which relief could be granted pursuant to Rule 12(b)(6). (ECF No. 30.) Plaintiffs oppose the Motion. (ECF No. 34.) Defendants filed a Reply (ECF No. 35), as well as Notices of Supplemental Authority (ECF Nos. 36, 37). Having reviewed all of the filings submitted in connection with the Motion and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendants' Motion to Dismiss is **GRANTED**.

1

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This matter arises out of Seterus's attempt to collect a debt, an attempt Plaintiffs claim violated the Fair Debt Collection Practices Act, 91 Stat. 874, 15 U.S.C. § 1692 *et seq.,* ("FDCPA" or the "Act").

### A. Factual Background

Fordham is a resident of Monmouth County, New Jersey, while the Gannons are residents of Burlington County, New Jersey. (Second Am. Compl. (ECF No. 25) ¶¶ 10-11.) Plaintiffs claim to be "Consumers" as that term is defined by the FDCPA, meaning a "natural person obligated or allegedly obligated to pay any debt." (*Id.* ¶ 12; *see also* § 1692a(3).)

Seterus was a corporation organized under Delaware law with a principal place of business in North Carolina until it was purchased in February 2019 by Nationstar Mortgage, LLC, a Delaware limited liability company. (ECF No. 25 ¶¶ 13-14.) Seterus was a debt collector as that term is defined by FDCPA, meaning one "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." (*Id.* ¶ 15; *see also* § 1692a(3).)

Fordham owns a home in Howell, New Jersey, that is the security for the loan used to buy that home; the mortgage is held by Federal National Mortgage Association ("Fannie Mae"). (ECF

---

[1] For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

2

No. 25 ¶¶ 54-56.) On March 1, 2015, Fordham's loan, then in default, was transferred to Seterus for servicing. (*Id.* ¶¶ 58-59.)

The Gannons own a home in Cinnaminson, New Jersey, that is the security for a loan used to buy the house; the mortgage is owned, backed or "controlled" by Federal National Mortgage Association ("Fannie Mae"). (*Id.* ¶¶ 63-65.) On September 11, 2015, the Gannons' loan, then in default, was transferred to Seterus for servicing. (*Id.* ¶ 66.)

Seterus's practice was to send homeowners/borrowers in New Jersey a form letter, titled "Notice of Intent to Foreclose," when their accounts became more than 45 days delinquent. (*Id.* ¶¶ 2, 25.) Since Plaintiffs' accounts were transferred, Seterus "has alleged" Plaintiffs "were more than 45 days delinquent on their mortgage," and it sent Plaintiffs numerous versions of a form letter they call "the New Jersey Final Letters." (*Id.* ¶¶ 61, 67.) This is in keeping with Seterus's practice of sending homeowners in New Jersey this form letter when their accounts were more than 45 days delinquent. (*Id.* ¶ 2.)

This New Jersey Final Letter identifies Seterus as a debt collector, which is defined by the FDCPA as a "person who offers or extends credit creating a debt or to whom a debt is owed." (*Id.* ¶¶ 15, 69, 94-95; *see also* § 1692a(6).) The New Jersey Final Letter states, in relevant part:

> • "If full payment of the amount in default is not made by [the designated expiration date], a mortgage foreclosure lawsuit against you may be initiated."
> • "To avoid the initiation of a foreclosure proceeding, you must cure the default by paying or tendering the sum of [the default amount], as itemized above, on or before [the designated expiration date]."
> • "If the default is not cured by [the designated expiration date], we may take steps to terminate your ownership in the property by initiating foreclosure proceedings in a court of competent jurisdiction."

(ECF No. 25 ¶ 26). Plaintiffs allege the New Jersey Final Letters sent to them falsely suggested Seterus would commence foreclosure proceedings absent full payment, when in reality it was the

3

corporate policy of Seterus and Fannie Mae, as well as set forth in RESPA, not to initiate foreclosure until a loan was 120 days delinquent. (*Id.* ¶ 36-53.)

Plaintiffs contend their Fannie Mae debts meet the definition of that term in the FDCPA, meaning an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." (*Id.* ¶ 97; *see also* § 1692a(5).) Plaintiffs claim Seterus is a creditor as defined by the Act, meaning it is a "person who offers or extends credit creating a debt or to whom a debt is owed." (ECF No. 25 ¶ 25; *see also* § 1692a(4).) Plaintiffs further claim they and all prospective members of the class are "consumers," as defined by the FDCPA, meaning they are natural persons obligated to pay a consumer debt. (ECF No. 25 ¶ 96; *see also* § 1962(a)(3)).

Plaintiffs argue that because RESPA and the corporate policies of Seterus and Fannie Mae require a 120-day default, Seterus's New Jersey Final Letter violates the FDCPA. (ECF No. 25 ¶ 40.)

### B. Procedural History

On September 12, 2018, Fordham filed a Complaint alleging Seterus violated the FDCPA and the New Jersey Consumer Fraud Act and seeking class-action status. (ECF No. 1.) On December 3, 2018, Fordham filed an Amended Complaint alleging same. (ECF No. 9.) Seterus moved to dismiss the Amended Complaint in December 2018. (ECF No. 12.) This Court granted that Motion in July 2019. (ECF No. 23, 24.)

In August 2019, Fordham filed the Second Amended Complaint, adding the Gannons as Plaintiffs. (ECF No. 25.) In September 2019, Seterus and Nationstar Mortgage, in lieu of filing an

Answer, filed this Motion to Dismiss. (ECF No. 30.) Plaintiffs filed their opposition to the Motion on November 4, 2019. (ECF No. 54.) Defendants filed a Reply on November 12, 2019. (ECF No. 35.) Defendants filed Notices of Supplemental Authority on November 14, 2019, and January 22, 2020. (ECF Nos. 36, 37.)

Plaintiffs allege Seterus violated four provisions of the FDCPA, including 15 U.S.C. § 1692e; § 1692e(5); § 1692e(10); and § 1692f. Broadly, Plaintiffs allege Seterus violated these FDCPA provisions in that Seterus used false representations and/or deceptive means in the form of untimely threats to foreclose on homeowners, though Seterus knew it had no intention of doing so and that the law wouldn't allow it to do so. (*Id.* ¶¶ 94-142.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

5

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

### III. DECISION

Seterus argues the Second Amended Complaint should be dismissed as time-barred because the claims therein do not relate back to the original Complaint and no longer are within

6

the one-year statute of limitations for FDCPA allegations. (Def.'s Br. in Support of Mot. (ECF No. 30-1) at 8-14.) Seterus contends that, even if the Second Amended Complaint does relate back, dismissal is required because it fails to state a claim for which relief can be granted. (*Id.* at 15.) The § 1962e claim should be dismissed, Seterus asserts, because it did not threaten any action it could not legally take or did not intend to take. Seterus contends this also defeats Plaintiffs' § 1962f claim. (*Id.* at 18-21.) Seterus further argues the foreclosure letters are not actionable because they were sent pursuant to New Jersey's Fair Foreclosure Act. (*Id.* at 21-25.) The § 1962e(10) claim should be dismissed, Seterus contends, because the debt-collection letter does not contain any materially false representation. Finally, Seterus says the Second Amended Complaint should be dismissed as to Fordham individually because the failure to attach the foreclosure letter she allegedly received means she fails to meet Rule 8 pleading standards and cannot establish an injury in fact, denying her Article III standing. (*Id.* at 35-38.)

Plaintiffs counter that their claims are not barred by the statute of limitations because the Second Amended Complaint relates back to the original Complaint. (Pls.' Br. in Opp. of Mot. (ECF No. 34) at 3-7.) Indeed, Plaintiffs proffer a chart to support this argument showing how sections of the original Complaint form the heart of the Second Amended Complaint. (*Id.* at 6 (citing Pls.' Ex. A (ECF No. 34-2)).) More substantively, Plaintiffs argue the Motion should be denied because Seterus's foreclosure letters notified Plaintiffs that foreclosure proceedings were more imminent than the law and well as the corporate policies of Seterus, and of Fannie Mae for that matter, allowed. (ECF No. 34 at 10-11.) Plaintiffs contend disclaimer language in the letters, stating that foreclosure proceedings "will not be commenced 'unless and until allowed by applicable law,'" provide no insulation from liability because the language of the letters still would

7

mislead the "least sophisticated consumer," which is the lens through which Courts must examine FDCPA claims. (*Id.* at 12-14.)

Plaintiffs further counter that Defendants misread § 1962e(5) as applying only to misleading threats of "imminent" litigation. (*Id.* at 17.) Instead, Plaintiffs argue, the relevant inquiry "is whether Seterus threatened to take any action it did not intend to take or imparted a fair sense of urgency to the Plaintiff." (*Id.*) Plaintiffs claim misrepresentations in the foreclosure letters were material because they would confuse the least sophisticated debtor and thus constitute a sufficiently pleaded § 1962e(10) allegation to defeat the Motion to Dismiss. (*Id.* at 18-21.) Plaintiffs argue the § 1962f claim, which they describe as a so-called "catch-all provision for unfair conduct not specifically enumerated in any other section of the FDCPA," would not be dismissed unless the Court finds the underlying conduct to violated § 1962e. (*Id.* at 21-22.)

Finally, Plaintiffs contend Fordham has Article III standing because, though she did not attach a foreclosure letter sent to her to the Second Amended Complaint, the letter she did attach includes Seterus's admission that it sent her, on February 20, 2018, the same kind of foreclosure letter sent to the Gannons (the "Gannons' Letter"). (*Id.* at 23-24.) As such, Plaintiffs argue, Fordham has sufficiently demonstrated an injury in fact that is traceable to Seterus. (*Id*. at 24-31.)

Seterus replies that Plaintiffs' statute-of-limitations defense fails because the Second Amended Complaint's allegations "differ in 'time and type' from Fordham's prior complaints," and so the Second Amended Complaint does not relate back to the original Complaint. (Def.'s Reply (ECF No. 35) at 1.) Seterus also asserts Plaintiffs have failed to identify any statement in the Second Amended Complaint that "constitutes a ***material*** misrepresentation," and that

"Plaintiffs cannot create such a misrepresentation by selectively quoting from the foreclosure letters while excluding clarifying language that negates their claims." (*Id.*)

### A. FDCPA Claims

Congress enacted the FDCPA as a result of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right Congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

As a general proposition:

> "To prevail on an FD[]CPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."

*Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). In the Motion to Dismiss, Seterus does not dispute that Plaintiffs are "consumers" under the meaning of the FDCPA, that it is a debt collector pursuant to the FDCPA, or that the Letters challenged in this action involve an attempt to collect a debt as defined by the FDCPA. Rather, Seterus argues only that it did not violate a provision of the FDCPA in attempting to collect the debt. Therefore, this opinion will only address that issue.

Pursuant to 15 U.S.C. § 1692e:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt;
> . . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*See also Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). Because the FDCPA is a remedial statute, courts "construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

In considering claims under the FDCPA, the Third Circuit has held "that certain communications from lenders to debtors should be analyzed from the perspective of the 'least sophisticated debtor.'" *Id.* (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (applying the perspective of the least sophisticated debtor to § 1692g) (citation omitted); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("Statutory notice under the Act is to be interpreted from the perspective of the 'least sophisticated debtor.'")); *see Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008) (applying the "least sophisticated debtor" standard to a claim under 15 U.S.C. § 1692e(3)).

"The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least

10

sophisticated debtor." *Brown*, 464 F.3d at 454 (quoting *Wilson*, 225 F.3d at 354). This lower standard comports with the mandate of the FDCPA, which is to protect "all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious from abusive debt collection practices." *Id.* (citations omitted). However, the standard does not provide for "bizarre or idiosyncratic interpretations of collection notices." *Id.* (quoting *Wilson*, 225 F.3d at 354–55). Instead, this standard, while "'lower than the standard of a reasonable debtor' . . . 'preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care.'" *Tabb v. Ocwen Loan Servicing, LLC*, 2020 WL 115506, at *1 (3d Cir. 2020) (quoting *Rosenau*, 539 F.3d at 221).

### i. Statute of Limitations

Seterus contends the Second Amended Complaint should be dismissed because Plaintiffs' allegations do not relate back to the pleading that instituted this litigation. Specifically, the original Complaint's allegations centered on what Seterus labels default letters, and the since-dismissed Amended Complaint "alleged no facts related to the Foreclosure Letters and no theory based on an ostensible threat to foreclose prior to 120 days." (ECF No. 30-1 at 10.) The Second Amended Complaint's claims, Seterus argues, are based on so-called Foreclosure Letters that bear "little similarit[y] in format, structure, length, and content to the Default Letters." (*Id.*)

Federal Rule of Civil Procedure 15 governs amended pleadings and provides, in pertinent part, that an amended pleading "relates back to the date of the original pleading . . . when the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" *Wilson v. City of Atl. City*, 142 F.R.D. 603, 605 (D.N.J. 1992) (quoting Fed. R. Civ. P. 15(c)). In the Third Circuit, the relation-back issue hinges on whether there is a "common core of operative facts" in Fordham's original pleading and

11

in the Second Amended Complaint such that Seterus "has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

Seterus argues the Second Amended Complaint should be dismissed for not relating back to the original Complaint because Fordham previously based her allegations of FDCPA violations on the allegedly misleading "Default Letter," but now bases her allegations on the allegedly misleading "Foreclosure Letters." Seterus sees this as analogous to *Glover v. F.D.I.C.*, where the Third Circuit affirmed dismissal of an amended complaint after determining the new alleged violation differed in time and type from those allegations in the original pleading. (ECF No. 30-1 at 9 (citing *Glover*, 698 F.3d 139, 145-147 (3d Cir. 2012) (citing *Mayle v. Felix,* 545 U.S. 644, 657–59, 125 S. Ct. 2562, 162 L.Ed.2d 582 (2005).)

In June 2019, this Court dismissed Plaintiff's Amended Complaint, reasoning that Fordham's failure to either attach any Seterus letters sent to New Jersey homeowners, least of all to Fordham herself, or to quote from any such letters sent to her made it impossible for the Court to "determine whether Seterus's letters, from the perspective of the least sophisticated consumer, constitute a threat for foreclosure, use deceptive means to collect or attempt to collect, or use unfair or unconscionable means to collect or attempt to collect the debt owed." (ECF No. 23 at 7-8; *see also Fordham v. Seterus, Inc.*, No. 18-13808, 2019 WL 3451738, at *4 (D.N.J. July 31, 2019) (citing *Alfaro*, 2012 WL 1150845, at *2 (finding the Complaint failed to set forth sufficient facts to support a claim under § 1692e(5) because it was not possible "for the Court to discern whether Defendant's letter violated § 1692e(5) when [the] [p]laintiff plead[] only a snippet of its contents and d[id] not allege any facts in support of the claim").)

12

The Court finds itself in a similar situation concerning the inquiry into whether the Second Amended Complaint relates back to the original pleading. While the original Complaint did allege that Seterus communications made foreclosure-related threats,[2] the allegations were based on statements contained in letters sent to unrelated parties in different states—the so-called North Carolina letters—that Fordham represented were "materially the same as" letters she received. In dismissing the Amended Complaint, the Court declined "to speculate as to the contents of the letters Fordham received," and so, accordingly, it could not ascertain which provisions in the North Carolina Letters were similar and which were different from provisions in letters allegedly sent to New Jersey homeowners. *Id.* at *4.

Plaintiffs contend the Second Amended Complaint relates back because the core allegation of the Second Amended Complaint mirrors the core allegation of the original pleading: "that Seterus sent a form letter to all consumers in New Jersey whose mortgage loans became past due which misrepresented Seterus' intensions and legal rights with respect to what a consumer must do to avoid foreclosure." (ECF No. 34 at 4.)

The original Complaint excerpted two sections of what Fordham termed the New Jersey Final Letter, though the excerpts really were from North Carolina letters. Still, Fordham alleged based on information and belief that these North Carolina Letters were "substantially identical" to the letters Seterus sends to New Jersey homeowners in default. Fordham claimed the New Jersey Final Letter she received

> "specifically states: If full payment of the default amount is not received by us . . . on or before [the Expiration Date], *we will accelerate the maturity date of your loan* and upon such acceleration the ENTIRE balance of the loan, including principal, accrued

---

[2] The Court observes, for instance, that a search of the Complaint yields 29 appearances for the word "foreclosure," four uses of "foreclose," and one mention of "foreclosing." (*See* ECF No. 1.)

13

> interest, and all other sums due thereunder, shall, at once and without further notice, become immediately due and payable."

(ECF No. 1 ¶ 41; *see also* Pl.'s Ex. A (ECF No. 1-1).)

Fordham also claimed the New Jersey Final Letter she received stated:

> IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION DATE, THE LOAN OWNER AND WE INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS. ADDITIONAL FEES SUCH AS FORECLOSURE COSTS AND LEGAL FEES MAY BE ADDED PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.

(ECF No. 1 ¶ 42; *see also* Pl.'s Ex. A (ECF No. 1-1) at 1.)[3]

Fordham doesn't attach a copy of the New Jersey Letter she says she received from Seterus to the Second Amended Complaint. Instead, she attaches an entirely different letter that contains no similar language to these excerpts. (*See* Pls.' Ex. C (ECF No. 25-3.) Fordham explains in a footnote that this letter confirms that Seterus sent Fordham a Foreclosure Letter in February 2018 that Fordham represents is "the same" as the Foreclosure Letters Seterus sent to the Gannons that were attached to the Second Amended Complaint. (ECF No. 25 at 10 n.1; *see also* Pls.' Exs. A, B (ECF Nos. 25-1, 25-2.) In other words, Fordham has not supported any of her three pleadings with actual copies of allegedly violative letters she received from Seterus. As a result, the Court must make a determination regarding whether her Second Amended Complaint relates back to the original pleading on the basis of her representations that the Seterus letters she allegedly received were substantially similar both to the North Carolina Letters and to letters received by the Gannons.

---

[3] The letter produced at Ex. A has wording slightly different from that quoted in the Second Amended Complaint, stating, in relevant part: "WE AND THE LOAN OWNER INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES. . . ." (ECF No. 1-1 at 1.)

14

To relate back under *Glover* and *Mayle,* Fordham's Second Amended Complaint must be supported by facts of the same time and type as in the original pleading. The Court cannot conclude Plaintiffs have met the "time and type" requirement. While Fordham avers that the Seterus letter attached to the Second Amended Complaint confirms she received a Foreclosure Letter from Seterus in February 2018, the original pleading did not provide any dates for when Fordham received letters from Seterus. The original pleading claims only that Fordham's account was referred to Seterus in February 2015, and that she received letters from Seterus after that whenever her account was 45 days in default.

Furthermore, the North Carolina Letters relied on for the allegations contained in the original Complaint are not substantially similar to the Gannon letters Fordham relies on for her allegations in the Second Amended Complaint. For instance, the North Carolina Letter contains the first excerpted paragraph above, which the Court will refer to as an acceleration paragraph, stating that the failure to receive a payment by a set date would result in Seterus's acceleration of the maturity date of the loan. (ECF No. 1-1) The Gannons' letter contains no such paragraph. (*See* ECF No. 25-1, 25-2.) Indeed, the Gannons' Letters only mention of acceleration occurs in paragraph three, which states, in pertinent part:

> "To cure this default, you must pay all sums that would have been due in the absence of default at the time of such payment, perform another obligation that you would have been bound to perform in the absence of default or the exercise of an acceleration clause . . . ."

(*Id.*) Here, acceleration is of a vastly different character, namely seemingly referencing a clause in the Note evidencing the loan, than in the North Carolina Letter, where acceleration appears to infer the unilateral and punitive action of Seterus. (*Id.*)

The North Carolina letter also contains a paragraph in all-capitalized words stating that in the event a default is not cured, Seterus and the loan holder intend to enforce the loan holder's

15

rights, which may include the commencement of foreclosure proceedings. (ECF No. 1-1.) There is no all-capitalized paragraph in the letters received by the Gannons. (*See* ECF No. 25-1, 25-2.) Paragraph two of the Gannons' Letters does state that "a mortgage foreclosure lawsuit against you may be initiated" in the event default is not cured by the expiration date, but there is no mention of enforcing the loan holder's rights. (*Id.*)

The Court is not persuaded by Fordham's argument that the Second Amended Complaint relates back because Fordham has "merely expound[ed] upon and further detail[ed] the factual scenario and [] claims that were roughly sketched in [the] original Complaint." *Bensel v. Allied Pilots Ass'n,* 387 F.3d 298, 310 (3d Cir. 2004). Fordham's original pleading was based on allegedly violative language in letters Fordham claimed to have received from Seterus that were "substantially similar" to the North Carolina letters received by nonparties at least three years before Fordham began receiving Seterus letters. But, the North Carolina Letters attached to the Complaint bear little resemblance in style or format to the New Jersey letters received by the Gannons and attached to the Second Amended Complaint.

However, the Court does conclude the Second Amended Complaint relates back to the original pleading because Seterus was put on notice from the initial pleading "of the general fact situation and legal theory upon which the amending party proceeds." *Bensel*, 387 F.3d at 310. In short, the gravamen of both complaints is the same: that the letters sent by Seterus to New Jersey homeowners/borrowers violate various subsections of § 1962e and/or § 1962f because the letters misleadingly or falsely threatened to take actions against borrowers they could not or would not take under the law or under its own corporate policies. The FDCPA claims were wholly contained in only Count One of the original Complaint, but that count expressly alleges violations of §§ 1962e, (5), (10) and 1962f, the FDCPA section that constitute the basis for Fordham's claims

16

in Counts One through Four of the Second Amended Complaint. Accordingly, the Court concludes Seterus's Motion to Dismiss the Second Amended Complaint for failing to relate back to the original Complaint as to Fordham's claims is **DENIED**.

However, the same conclusion does not hold for the Gannons, whose claims do not relate back to the original pleading. Seterus argues the Third Circuit's position on applying Rule 15 to the addition of new plaintiffs via an amended complaint requires "plaintiffs to show that the already commenced action sufficiently embraces the amended claims so that defendants are not unfairly prejudiced by these late-coming plaintiffs and that plaintiffs have not slept on their rights. (ECF. No. 30-1 at 13 (quoting *Feuerstack v. Weiner*, 12-4253, 2013 WL 3949234, at *2 (D.N.J. July 30, 2013)).) Seterus contends it is prejudiced by the addition of the Gannons as Plaintiffs. That is because, Seterus argues, without recourse to the Gannon letters attached to the Second Amended Complaint, Fordham's allegations would have the same deficiencies that caused this Court to dismiss her Amended Complaint, in other words, allegations unsupported by "information about the [Default Letters] sent to Fordham that would allow the Court to find with any degree of plausibility that Seterus violated the [FDCPA]." (ECF No. 30-1 at 14 (citing ECF No. 23 at 7).)

Plaintiffs do not expressly counter Seterus's argument. Rather, Plaintiffs claim only that the Gannons' claims are not time-barred because the Gannons received allegedly violative letters from Seterus on September 12, 2017 and December 18, 2017, within a year of the September 12, 2018, filing of the Second Amended Complaint. (ECF No. 34 at 7.)

Rule 15 does not expressly provide for the addition of new parties. However, the Third Circuit's jurisprudence requires the satisfaction by the plaintiff of three prongs:

> First, "the claim or defense asserted in the amended pleading must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(1)(C). Second, "within the period provided by Rule 4(m) for

17

> service of the summons and complaint, the party to be brought in . . . received such notice of the action that it will not be prejudiced in defending on the merits." Fed.R.Civ.P. 1 5(c)(1)(C)(i). Third, within the period provided by Rule 4(m), the defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed.R.Civ.P. 15(c)(1)(C)(ii).

*Feuerstack*, 2013 WL 3949234, at *2.

While the Gannons' claim appears at the least to arise out of the same conduct as that alleged by Fordham against Seterus, the addition of the Gannons fails the notice element. Seterus did not have notice it would have to defend against the Gannons' claims until after the Second Amended Complaint was filed, which was more than 350 days after the filing of the original Complaint, well outside the 120-day period provided by Fed. R. Civ. P. 4(m). *Id.* Accordingly, the Court concludes Defendants' Motion to Dismiss the Second Amended Complaint as to the Gannons' claims is **GRANTED**.

The Court now turns to a determination about the sufficiency of substance of Fordham's claims in the Second Amended Complaint.

### ii.    FDCPA's § 1692e

Seterus argues the Second Amended Complaint should be dismissed for failing to state a claim under §§ 1962e(5), 1962e(10), or 1962f of the FDCPA for which relief could be granted pursuant to Fed. R. Civ. P. 12(b)(6). The Court agrees.

Fordham alleges the New Jersey Final Letter, meaning letters titled "Notice of Intent to Foreclose," misrepresented to borrowers who were less than 120 days in default on their loans of Seterus's intention to initiate foreclosure proceedings both because it did not have the legal right to do so unless the account was more than 120 days in default and because its corporate policy was not to initiate a foreclosure unless the account was more than 120 in default.

Pursuant to the FDCPA, debt collectors may not "threat[en] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). A debt collector also shall not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10). Finally, § 1962f provides, in part, that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

This Court's prior dismissal of the Amended Complaint resulted from Fordham's failure to attach copies of the letters she allegedly received from Seterus. In the Amended Complaint, Fordham alleged the letters she received from Seterus were "substantially similar" to letters Seterus allegedly sent to borrowers in North Carolina. In the Second Amended Complaint, Fordham again builds her allegations on a foundation of letters sent to others. In doing so, Fordham again fails to provide the Court with information that would enable the Court to determine with any degree of plausibility that Seterus violated the FDCPA sections alleged. Even were the Court inclined to accept the Gannons' letters as examples of near carbon copies of letters she received, which the Court is not for the reasons stated earlier, Fordham still would have failed to provide information crucial to any FDCPA analysis, namely when she received the letters. The importance of this can been demonstrated from the intersection of just two facts. Fordham never expressly acknowledges being in default of the mortgage. While she alleges the loan "was in default when transferred to Seterus for servicing," (ECF No. 25 ¶ 58), elsewhere she states that since that March 2015 transfer of her account "Seterus has alleged that Fordham was more than 45 days delinquent on her mortgage." (*Id.* ¶ 60.) Nowhere does Fordham allege that she was in default or the date on which she went into default. The only specific allegation she makes as to receiving a letter is to

claim, based on information and belief, Seterus sent her a letter on February 20, 2018, or three years after her account first was transferred to Seterus for being in default. (*Id.* ¶ 61.)

The central theme of her allegations is that Seterus violated the FDCPA because it threatened to take actions it could not take until Fordham was in default for at least 120 days. This Court cannot determine whether that statement is misleading or false because Fordham never states how long she had been in default, if at all, when she received the letters she alleges. In other words, because Fordham has not alleged sufficient facts for this Court to determine whether Seterus threatened to take actions either illegal or against its own policies, the Court must reiterate its holding from its dismissal of the Amended Complaint, that "to ascertain whether Seterus's letters violate the FDCPA, the Court must analyze the actual language of the letters, which it cannot do at this time." (ECF No. 23 at 8.) Accordingly, Defendants' Motion to Dismiss Fordham's Second Amended Complaint is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**.

Date: June 16, 2020 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**